### GLIWA et al. v. UNITED STATES STEEL CORPORATION et al.

#### No. 4819.

Circuit Court of Appeals, Third Circuit.

April 18, 1932.

Rehearing Denied May 30, 1932.

Asa L. Carter, of McKeesport, Pa., and Joseph L. Pinkasiewicz, of McKeesport, Pa., for appellants.

John J. Heard, John C. Bane, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

In order to discover the nature of the proceeding below and determine precisely what is here on appeal, we shall endeavor to clear this case of some of its confusion. In doing so it should be understood that nothing we may say will be in criticism of plaintiffs' counsel whose great industry and earnest belief in his case doubtless moved the trial court to consider it with much labor and great patience.

We find ourselves confronted on the threshold by three questions: First, who are the parties to the action; second, what decrees are here for review; and third, what is the nature of the action?

As to the original parties there is no difficulty. They consist of four non-resident freehold plaintiffs, and one non-resident and two resident corporate defendants. Forty-eight other freeholders and one hundred and thirty-eight non-freeholders of undetermined citizenship petitioned to intervene. From the court's order denying their petition some of them have appealed.

The action was on a bill in equity for the wrongful use of the plaintiffs' land in the reception of by-product coke oven chimney wastes and for personal injuries to a large group of those claiming the right to inter-

vene, praying relief of which we shall presently speak more at length.

The original bill was dismissed because it did not conform to equity rule 25 (28 USCA § 723). Three amended bills were filed, sometimes without leave. They also were dismissed for the same reason; and for the same reason the filing of a proposed fourth amended bill was refused. Supplementing these orders were orders of the court against the plaintiffs on motions to open and vacate preceding orders. As the petitions to intervene contained the same infirmities as the bill and amended bills they, too, were refused. Being uncertain what decrees and orders are appealed from, we have examined and shall review all of them.

Of the five bills only the second and third amended bills appear in the record. We shall therefore assume they state the plaintiffs' case; and as the third is a mere rearrangement of the second, stating the case with like elaboration or infirmity, we shall for convenience direct and limit our discussion to the second amended bill, keeping in mind the requirement of good pleading, long in force and emphasized by equity rule 25, that a bill shall contain "a short and simple statement of the ultimate facts upon which the plaintiff asks relief, omitting any mere statement of evidence." Kelley v. Boettcher (C. C. A.) 85 F. 55; Crim v. Rice (C. C. A.) 232 F. 570; Bayley & Sons v. Braunstein Bros. Co. (D. C.) 237 F. 671; Anastasopoulos v. Steger & Sons Piano Mfg. Co. (C. C. A.) 16 F.(2d) 32.

This bill, now accompanied by a sixty-page index of scientific and industrial facts of which the court is asked to take judicial notice, contains forty-one paragraphs, purports to set forth six separate causes of action in equity and, as to each cause of action, makes the same seven prayers for fifteen forms of relief.

The plaintiffs say their first cause of action is stated in the first fifteen paragraphs. These contain a long recital of the plaintiffs' ownership of undescribed tracts of land, aggregating two hundred and fifty-one acres, situate opposite lands of the defendants on which are built and operated by-product coke ovens, a long account of the defendants' operations and a scientific statement of the chemical character of the waste chimney gases which, they aver, are, by the prevailing winds, blown toward and allowed to settle upon the plaintiffs' lands, causing an annual damage many times greater than their present claimed value, reckoned on their possible future use for airport purposes. This state-ment of a claimed cause of action, whatever may be its nature, clearly violates equity rule 25, for it is far from "a short and simple statement of the ultimate facts" but is on the contrary a lengthy recital of evidence, relevant or otherwise.

As to the character of the cause of action the plaintiffs are vague, but, we understand, they maintain it is a nuisance or trespass. Whatever it may be, the plaintiffs should have pleaded it in a way to leave no doubt, that is, by a simple statement of the ultimate facts relieved of the burden of evidence. They have, on the contrary, pleaded a mass of evidence, resulting in confusion and raising an impossible legal situation where, in an attempt to state a case by evidence, the cause of action, if one exists, is hidden in the evidence and, naturally, cannot be brought to light by evidence whose legal purport and admissibility cannot be determined without first showing a cause of action to which it applies. Moreover, the relief prayed should have been appropriate to the offense charged, whereas the relief sought here is inappropriate and, on its face, is difficult to understand. This relief, which is the same prayed for in the other five causes of action, is that the defendants be enjoined temporarily and permanently from interfering with the plaintiffs' lands; that the cloud be removed from their title; that the defendants make discovery of all matters complained of and fully account therefor; that the defendants be declared trustees of their own wrong and account for damages and profits; that a receiver, temporary and permanent, be appointed over the "fund," that is, a fund to be raised by the defendants and set aside to meet the plaintiffs' present and future complaints; that a part of the fund be advanced to the plaintiffs to be expended in the prosecution of this litigation; that all claims to the fund (to be made by the 186 petitioning intervenors) be presented within one year, denying intervention, however, to all who would, because of their citizenship, oust the court of its jurisdiction; that the plaintiffs' claim be declared a first lien on defendants' real estate (which apparently includes that used for by-product coke oven purposes and their vast properties elsewhere used for other purposes, even if previously encumbered by liens of others); that the plaintiffs have judgment for $1,560,000 and for such other and further relief as may be necessary. Manifestly, if the cause of action were for a plain nuisance or trespass, these manifold prayers for relief could not be granted. If one or more were applicable in

such case, the relief could be granted only on a showing of nuisance or trespass as understood at law or in equity. As such a case is not made in the bill, the relief prayed for could not be granted.

In stating the second cause of action the plaintiffs "repeat and re-allege each and *all* allegations of" the first cause of action, and add allegations of damage to their domestic animals, farm machinery, buildings, etc., and pray for the same comprehensive relief. The only difference in form between the second and first causes of action is that the second is made to include the first. As neither is properly pleaded, their joinder cannot cure the legal defect.

The third cause of action includes, by a like reference, the first cause of action, charges the defendants with twelve distinct acts of negligence in operating their by-product coke ovens and asks the same broad relief. This looks like a pleading on a cause of action at law by a bill in equity praying equitable relief. It is bad.

The fourth cause of action, like the second and third, includes the first, alleges damage to the plaintiffs' crops and charges the defendants, by flooding their land with gases, for "use and occupation and rents and profits * * * for six years" at "$1,000 per acre per year," and prays the same elaborate equitable relief. On their own showing here are three causes of action linked together: One for a nuisance to or trespass upon land; another for a like act to crops; and a third for use and occupation. We do not believe a judge could try this fourth cause of action as pleaded.

The fifth cause of action, like the second, third and fourth, includes the first and is pleaded as though for trespass quare clausum fregit. The plaintiffs also charge a threat of future damage to their land based on the hope of higher land values and seek the same equitable relief. In legal effect this pleading does not differ from the others.

The sixth cause of action, like the second, third, fourth and fifth, includes the first and is for violations of the Sherman Anti-Trust Law (15 USCA §§ 1–7, 15), charging the defendants with unlawful monopoly and conspiracy in restraint of trade in natural and artificial gas, causing, by reason thereof, damage to the plaintiffs. It is difficult to see from a legal point of view how such a cause of action could be tried in this kind of case or how the particular relief prayed for could be awarded and enforced.

Following the last cause of action are allegations "of special damages and irreparable injury" declared generally without reference to any particular ground of action.

We really cannot tell from this pleading what precisely is the plaintiffs' complaint in the various groups of causes of action, or whether, hidden under the mass of recited evidence, there is some cause of action legally susceptible of trial. The plaintiffs however insistently urge that, even if some of the alleged causes of action are bad, this court should reverse the orders of dismissal made by the court below, direct that the last amended bill be re-instated and that the case proceed to trial if it can find at least one good cause of action.

It is not the duty of a court in such case to struggle in an effort to uncover and pick out some possible ground of complaint which, if properly stated, would present a cause of action. It is the duty of the plaintiffs themselves to state their complaint in simple terms so that a court may see what it is and, knowing, may try it properly. The plaintiffs have failed in this regard. Likewise has the large group of persons seeking to intervene on a petition containing in substance, somewhat abbreviated, the allegations of the second amended bill and containing also the same infirmity. In any event their right to appeal is doubtful. Credits Commutation Co. v. United States, 177 U. S. 311, 20 S. Ct. 636, 44 L. Ed. 782; Board v. Bank (C. C. A.) 27 F.(2d) 286.

The difficulty in understanding this suit and particularly in understanding the possible application of the unusual relief to the causes of action pleaded is somewhat relieved by an examination of the original bill which contains matter, omitted from the later amended bills, showing the plaintiffs' basic ground of action as they first conceived it and first pleaded it. It apparently is the idea that there exists between the four plaintiffs and three defendants the relation of landlords and tenants (which, of course, excludes the one hundred and eighty-six petitioning intervenors) based on the plaintiffs' attempt to create a written lease between them whereby the defendants acquired an interest in the plaintiffs' land and the plaintiffs somehow acquired an interest in the defendants' by-product coke ovens. With this theory in view there may be some understanding of the plaintiffs' prayers for injunction, the appointment of a receiver, that the defendants be trustees de son tort, discovery and accounting, and the award of profits as well as damages. This claimed property relation arose out of a letter addressed by the plain-

tiffs "leasing" their land to the defendants "as a dumping ground for (their) waste fumes," charging therefor an annual rent of $1,000 per acre, and saying that "the first next succeeding use by you (the defendants) of any of this land will be deemed (by the plaintiffs) a full acceptance of these terms and conditions." As the defendants, without making reply, continued as before, the plaintiffs thought the lease was effected, and breached. When the plaintiffs dropped this ground of action from their subsequent bills, they, nevertheless, continued and repeated the same prayers for relief, hence the difficulty in understanding their application to the six causes of action last pleaded.

The several orders of the District Court here on review are affirmed.