# CREDITS COMMUTATION COMPANY *v.* UNITED STATES.

## SAME *v.* DEXTER.

## SAME *v.* AMES.

Nos. 233, 234, 235.   Submitted February 26, 1900. — Decided April 9, 1900.

When leave to intervene in an equity case is asked and refused, the order denying leave is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding.

The action of the court below, in denying the petitions to intervene, was an exercise of purely discretionary power, and was not final in its character.

ON October 9, 1893, Oliver Ames, 2d, and Samuel Carr, executors of Frederick L. Ames, deceased, and Peter B. Wyckoff and Edwin F. Atkins filed in the Circuit Court of the United States for the Eighth Circuit a bill of complaint against the Union Pacific Railway Company and a number of other companies in which the Union Pacific Railway Company had interests, praying for the appointment of receivers, the enforcement of certain alleged liens, and the administration of the properties of the Union Pacific Railway Company.   On October 13, 1893, S. H. H. Clark, Oliver W. Mink and Ellery Anderson were appointed receivers, and on November 13, 1893, upon petition of the Attorney General of the United States, John W. Doane and Frederick R. Coudert were appointed additional receivers.

On January 21, 1895, a bill of complaint was filed in the said Circuit Court by F. Gordon Dexter and Oliver Ames, 2d, as trustees of the first mortgage of the Union Pacific Railway Company, to foreclose that mortgage.

At the May term, 1897, the United States filed, in the Circuit Court of the United States for the Eighth Judicial Circuit, a bill of complaint against the Union Pacific Railway Company, and against S. H. H. Clark, Oliver W. Mink, Ellery Anderson, John W. Doane and Frederick R. Coudert, who had theretofore, on October 13, 1893, in the suit brought in said court by Oliver Ames, Samuel Carr and others against the said Union Pacific

Railway Company, been appointed receivers therefor, and against F. Gordon Dexter and Oliver Ames, as trustees, the Union Trust Company of New York, as trustee, J. Pierpont Morgan and Edwin F. Atkins, trustees, the Central Trust Company of New York, as trustee. The object of this bill was to secure a decree of foreclosure of the subsidy lien of the United States upon the property of the Union Pacific Railway Company between Council Bluffs, Iowa, and a point five miles west of Ogden, Utah.

On April 28, 1897, the Credits Commutation Company, a corporation of the State of Iowa, filed a petition in each of said three cases, praying for leave to intervene therein as a party, and to be heard to assert certain alleged rights and interests. On May 22, 1897, the Combination Bridge Company, a corporation of the State of Iowa, also filed petitions in said cases for leave to intervene therein for the same reasons set forth at length in the petitions of the Credits Commutation Company. On May 24, 1897, after hearing the counsel of the respective parties, an order was entered by the Circuit Court denying the prayers for leave to intervene, and on the same day an appeal was allowed to the Circuit Court of Appeals for the Eighth Circuit. On December 7, 1898, motions by the appellees to dismiss said appeals were sustained, and said appeals were accordingly dismissed; and thereupon the appellants in open court prayed an appeal to this court, which was allowed. *Credits Commutation Company* v. *Ames' Executors,* 62 U. S. App. 728. Motion to dismiss or affirm was submitted.

*Mr. John F. Dillon, Mr. W. R. Kelly* and *Mr. G. M. Lambertson* for the motion.

*The Attorney General* and *Mr. John C. Cowin* filed a brief in support of the motion.

*Mr. Henry J. Taylor* and *Mr. John C. Coombs* opposing.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The Credits Commutation Company and the Combination

Bridge Company, corporations of the State of Iowa, filed petitions for leave to intervene in three suits against the Union Pacific Railway Company. The object of those suits was to enforce by foreclosure the payment of bonds secured by mortgage and of a debt due to the United States created by certain subsidy bonds, and, pending such proceedings, the appointment of receivers to prevent the disintegration of properties of the railway company.

The Combination Bridge Company is the owner of a bridge across the Missouri River at Sioux City. The Credits Commutation Company is the owner of the stock of the bridge company, and also of interests in the capital stock of certain railroads connected by the said bridge. The petition alleges that the Credits Commutation Company was organized for the purpose of connecting said bridge and railroads with the Union Pacific Railway.

The Union Pacific Railway Company is a consolidated company, composed of the Union Pacific Railroad Company and the Kansas Pacific Railway Company, and Congress, by the act of July 1, 1862, in order to "secure to the Government the use of the same," conferred upon said companies grants of large and valuable tracts of the public lands, and further subsidized said companies by an advance to them of the public credit in the form of bonds of the United States. The fifteenth section of the said act of July 1, 1862, was in the following terms:

" And be it further enacted, That any other railroad company now incorporated, or hereafter to be incorporated, shall have the right to connect their road with the road and branches provided for by this act, at such places and upon such just and equitable terms as the President of the United States may prescribe. Wherever the word company is used in this act it shall be construed to embrace the words their associates, successors and assigns, as if the words had been properly added thereto."

The petition alleges that the Credits Commutation Company was organized in the latter part of 1894, but admits that said company has abstained from making any application to the President of the United States to fix the place at which and the

just and equitable terms upon which said company should build a railroad to connect with the road of the Union Pacific Railway company, because the latter company had been embarrassed and all its property was in the hands of receivers, and bills to foreclose in behalf of the holders of mortgage bonds and to enforce the creditor rights of the United States had been filed. It seems to be the theory of the petitioners that, under the provisions of the act of Congress, they have a right to connect their railroads, now or to be constructed, with the railroad of the Union Pacific Railway Company, and that they have, therefore, a right to intervene in the foreclosure proceedings, in order to protect their right to so connect and to protect the right of the public in such railroad connections.

As heretofore stated, the Circuit Court denied the petitions for leave to intervene, and upon appeal to the Circuit Court of Appeals that court dismissed the appeals. The view of the Circuit Court of Appeals was that the order of the Circuit Court refusing leave to intervene was not a final judgment or decree from which an appeal could be taken, and that, at any rate, the action of the lower court in refusing leave to intervene was not reviewable on appeal, inasmuch as it rested in the sound discretion of the chancellor to admit or reject the intervention. 62 U. S. App. 728, 732.

To show that the Circuit Court, in denying the petition for leave to intervene, was not exercising the usual discretion of a chancellor in passing upon a petition of an outside party for leave to intervene, but adjudicated the petitioners' rights asserted in the petitions, as if upon demurrer thereto, we are pointed to the language used: " Ordered, that the prayers of the petitioners for leave to intervene herein be and the same are hereby denied, not as matter of discretion, but because said petitions do not state facts sufficient to show that the petitioners, or either of them, have a legal right to intervene."

It is urged that the Circuit Court declined to treat the subject as of one of discretion, and elected to determine the legal rights of the petitioners, so as to preclude them from resorting thereafter to some other tribunal, and that, therefore, its judgment was a final one and properly reviewable on appeal.

We cannot accept this view of the meaning and effect of the order in question. What was sought in the petitions was leave to intervene in a pending and undetermined cause, and that right alone was determined. The very terms used by the court, that the facts stated were " not sufficient to show that the petitioners, or either of them, have a legal right to intervene," shows that what was considered was the right to intervene. That right refused, the petitioners were left free to assert such other rights as they might possess in any other tribunal. That this was the view of Judge Sanborn himself is seen in the following language of his opinion :

" Whatever the petitioner's right or interest may be, it is nothing more than a contingent, speculative future possibility. . It is contingent, because it is conditioned upon the construction of a railroad. It is speculative, because it depends for its existence upon the question whether or not capitalists shall see. sufficient profit in the construction of such a railroad to induce them to put in the necessary money for that purpose. It is future, because it has not yet come into existence, and it is possible because it may come into existence. Courts of equity are not accustomed, perhaps they have not the power, to adjudicate upon possible rights which are not in being and which are merely susceptible of coming into being at some unlimited time in the future."

The question was well considered by. the Circuit Court of Appeals, and we quote and adopt its statement, as follows :

" When such an action is taken, that is to say, when leave to intervene in an equity case is asked and refused, the rule, so far as we are aware, is well settled that the order thus made denying leave to intervene is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of .proceeding. Such an order not only lacks the finality which is necessary to support an appeal, but it is usually said of it that it cannot be reviewed, because it merely involves an exercise of the discretionary powers of the trial court. . . . It is doubtless true that cases may arise where the denial of a third party to intervene therein would be

a practical denial of certain relief to which the intervenor is fairly entitled, and which he can only obtain by an intervention. Cases of this sort are those where there is a fund in court undergoing administration to which a third party asserts some right which will be lost in the event that he is not allowed to intervene before the fund is dissipated. In such cases an order denying leave to intervene is not discretionary with the chancellor, and will generally furnish the basis for an appeal, since it finally disposes of the intervenor's claim by denying him all right to relief. The cases at bar, however, are not of that character. The petitioners were under no obligation to intervene in the litigation against the Union Pacific Railway Company to preserve their alleged right to form a junction with the road of that company when they should have completed their own road to a suitable junction point. The question which they sought to litigate in the pending litigation, could, we think, with more propriety and with less difficulty, have been litigated by an independent bill after they had completed, or were about completing, their line to a suitable junction point. Prior to that time the questions which they sought to raise by means of the intervening petitions were speculative questions, which the lower court, as we think, very properly, refused to consider or determine."

In *Connor* v. *Peugh,* 18 How. 394, it was said by Mr. Justice Grier, giving the opinion of the court:

"On the 5th of June, 1855, the tenant in possession came into court for the first time, and moved to set aside the judgment and execution issued thereon, and to be allowed to defend the suit for reasons set forth in her affidavit. The court refused to grant this motion, 'whereupon the said Mary Ann Connor prayed an appeal.'

"The tenant in possession having neglected to appear and have herself made defendant and confess lease, entry and ouster the judgment was properly entered against the casual ejector. No one but a party to the suit can bring a writ of error. The tenant having neglected to have herself made such, cannot have a writ of error to the judgment against the casual ejector. The motion made afterwards to have the judgment set aside and for

leave to intervene was an application to the sound discretion of the court. To the action of the court on such a motion no appeal lies, nor is the subject of a bill of exceptions or a writ of error."

In *Ex parte Cutting*, 94 U. S. 14, it was held that an appeal does not lie from an order of the court below, denying a motion in a pending suit, to permit a person to intervene and become a party thereto. *Guion* v. *Liverpool, London, &c., Ins. Co.*, 109 U. S. 173, is to the same effect.

Whether the contention of the petitioners that, under the legislation of Congress, they and railroad companies similarly situated had a right to connect with the road of the Union Pacific Railway Company, or shall have such a right with respect to that road in the hands of purchasers under the decree of foreclosure, at such places and upon such just and equitable terms as the President of the United States may prescribe, were not questions that, under the pleadings and evidence, were before the Circuit Court for its determination; and as its action, in denying the petitions to intervene, was an exercise of purely discretionary power, and not final in its character as respects such alleged right to connect, we think the Circuit Court of Appeals was right in holding that the appeals could not be entertained by that court, and its decree, dismissing the same, is accordingly

*Affirmed.*

MR. JUSTICE McKENNA took no part in the decision of the cases.