**WASHBURN CROSBY CO. v. NEE, Collector of Internal Revenue.**

No. 2730.

District Court, W. D. Missouri, W. D.

Feb. 19, 1936.

A. Z. Patterson and Dewitt C. Chastain, of the firm of Sparrow, Patterson, Chastain & Graves, both of Kansas City, Mo., for plaintiff.

Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., for defendant.

OTIS, District Judge.

On July 1, 1935, the plaintiff filed its bill of complaint in this case. Thereafter, on July 30, 1935, by leave of court, it filed its amended bill. It was alleged in this amended bill (as it had been al-

leged in the original bill) that the plaintiff is a processor of wheat as defined in the Agricultural Adjustment Act (chapter 25, 48 Stat. 31 [see 7 U.S.C.A. § 601 et seq.]), and as such subject to the taxing provisions of that act and of the regulations of the Secretary of Agriculture proclaimed pursuant to the act. It was alleged that the defendant, the collector of internal revenue, was demanding payment by the plaintiff of the tax provided for in the act and regulations. The bill alleged the unconstitutionality of the act in so far as it sought to impose processing taxes, alleged that the plaintiff had no adequate remedy at law, and prayed injunctive relief against the enforcement of the tax.

In the amended bill also were the following allegations:

"The granting of equitable relief in this action will avoid a multiplicity of suits, because the said processing taxes are invalid and the customers of the plaintiff to whom the processing taxes involved in this action have been passed on, and plaintiff avers that there are in excess of one thousand of such customers, who will be entitled to file claims and suits for a refund of such amounts of taxes as have been borne by such respective customers. * * *

"In the event the court shall adjudge the said processing taxes to be illegal and unconstitutional and shall issue its permanent injunction restraining the collection of such taxes from plaintiff, plaintiff offers to make restitution of such portion of said processing taxes as shall have been paid to it by any customer, all under the orders and supervision of this court."

Following the filing of the amended bill and after hearings, temporary injunctions were issued by this court and by the Circuit Court of Appeals for the Eighth Circuit restraining the enforcement by the defendant of the tax provisions of the Agricultural Adjustment Act against the plaintiff pending final hearing.[1] As a condition of the issuance of these injunctions, this court and the Court of Appeals required the plaintiff to pay to the clerk of this court amounts equal to the amounts demanded as taxes by the collector.[2] These amounts were to be repaid to the plaintiff if a permanent injunction should be issued, to the defendant if a permanent injunction should be denied.[3]

Before any hearing was had on the plaintiff's prayer for a permanent injunction the United States Supreme Court on January 6, 1936, in United States v. But-

---

[1] The temporary injunction issued by this court restrained the collection of taxes only for the period beginning with the filing of this case and ending with the amendment to the Agricultural Adjustment Act of August 24, 1935 (49 Stat. 750 [7 U.S.C.A. § 601 et seq.]). Larabee Flour Mills Co. v. Nee, and twenty-three other cases (D.C.) 12 F.Supp. 395. The Court of Appeals issued its order restraining the collection of the tax from the date of the amendment to the date of final hearing in this case.

[2] The point is made in the brief of counsel for the proposed intervener here that the orders of this court and the Court of Appeals under which the plaintiff paid into the registry of the court the fund now held by the court were that the plaintiff should deposit "with the clerk of this court all taxes which have been demanded of it by the collector." Therefore, say counsel, "The funds were paid in under such circumstances and conditions and are the taxes." But, of course, the phrase "the taxes" used in the orders was used merely for convenience and brevity of description. The very question involved in the case was whether lawful taxes were levied by the court. It turned out that

lawful taxes were not demanded by the act. What was paid in by the plaintiffs was not "taxes," but amounts equivalent to the purported taxes demanded by the collector.

[3] The point is made by counsel for the proposed intervener that there was no express language in the orders to the effect that if a permanent injunction issued the amounts paid in by the plaintiff would be returned to the plaintiff. That, however, was the necessary implication. Temporary injunctions issued by this court and the Court of Appeals "were conditioned upon the plaintiff depositing with the clerk of this court all taxes which have been demanded." The use of the word "depositing" clearly indicates it was the understanding that when a permanent injunction issued and the plaintiff prevailed in the proceeding the amount deposited would be returned to the depositor. Temporary injunctions were "conditioned" upon the deposit of the fund. The issuance of a permanent injunction, which necessarily supplanted and succeeded the temporary injunctions, removed the reason for holding the fund deposited and ipso facto restored to the depositor the right to possession of the fund.

ler, 56 S.Ct. 312, 80 L.Ed. ——, decided that the taxing provisions of the Agricultural Adjustment Act were unconstitutional and void. On January 13, 1936, in Rickert Rice Mills, Inc., v. Fontenot, 56 S.Ct. 374, 80 L.Ed. ——, the Supreme Court decided that a processor who had paid into court amounts equal to the amounts demanded by the collector was entitled to the return of the amount so paid into court. .

Following these decisions, the Circuit Court of Appeals for the Eighth Circuit, in which this case was then pending on appeal from this court, sent down (on January 31, 1936) its mandate directing this court to enter a final decree enjoining the collection of the taxes in controversy and directing the payment (less 1 per centum for statutory fee of clerk) of all moneys impounded under the order of the District Court and of the Court of Appeals to such parties or persons as may be found entitled thereto.

On January 3, 1936, Alvin Eades of Evansville, Ind., and others, filed in this court a petition for leave to intervene in this case. The petition for leave to intervene was accompanied by a proposed bill of intervention.

In the petition to intervene and in the proposed bill of intervention Eades alleges that he has an interest in this litigation both against the plaintiff and the defendant; that his interest is such that intervention is necessary to protect it, and that the nature of his interest is that he has "purchased a large amount of flour from the plaintiff. On each of the barrels of flour purchased from the plaintiff, the plaintiff charged (the petitioner) purchasing flour $1.38 extra on account of said processing tax, which has been paid over to the clerk of this court, and which the plaintiff is seeking to recover in the said original cause. The petitioner * * * (is) entitled to have that part of said funds paid to the clerk of this court by the plaintiff returned to (him) which (he) paid in the said extra charge for flour purchased by (him). * * *

"As soon as the said act became effective, and the taxes were levied against the plaintiff as a first domestic processor of wheat * * *, the plaintiff increased the price of wheat flour to (the petitioner) to cover the full amount of the processing taxes paid by it and passed on to

(the petitioner) the taxes levied, assessed and collected under the said Agricultural Adjustment Act * * * on all of the wheat that entered into the making of the flour purchased by (the petitioner) from the said plaintiff. * * *

"On all the flour sold by the plaintiff to (the petitioner) during all of the * * * period of time for which * * * deposits were made with the clerk * * * the plaintiff charged (the petitioner) $1.38 per barrel extra on account of said tax, and collected the said amount from (the petitioner) as to the flour purchased by him.

"(The petitioner) purchased from the plaintiff, during the time from May 1, 1935, to the date hereof, flour manufactured by the plaintiff * * *. On all the said flour, the plaintiff collected from (the petitioner) * * * the processing taxes on all wheat used in the making of the said flour, which amounted, as aforesaid, to $1.-38 per barrel.

"(The petitioner) did not pass the tax on to the purchasers of (his) products. * * * The processing tax collected in the price of the flour, from the baker, was absorbed by the baker. * * *

" * * * (the petitioner) having paid the said taxes on all the flour purchased by (him) from the plaintiff, (has) and should be found and declared by this court to have an equitable interest in and lien on the said fund on deposit with the clerk in the amount contributed by (the petitioner) to the said fund, through the extra amount collected from (him) by the plaintiff on the flour purchased from the plaintiff."

Upon the theory of his proposed intervening petition, the petitioner, Alvin Eades, claims to be entitled to a finding and declaration that he has an interest in the amounts paid to the clerk of this court by the plaintiff in the amount of $3,450.

The question now for decision is whether the motion for leave to intervene shall be sustained or denied.

1. Intervention in a suit in equity is conditioned by the provisions of Equity Rule 37, 28 U.S.C.A. following section 723. That rule is:

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with

whom or in whose name a contract has been made. for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought. All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when any one refuses to join, he may for such reason be made a defendant.

"Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

 Undoubtedly the petitioner Eades claims an interest in this litigation. But a right to intervene does not arise from a mere claim of interest. A person claiming an interest "may * * * be permitted. to assert his right by intervention." The very words used in the rule inferentially authorize the exercise of discretion. It was not intended that intervention should be allowed upon any merely baseless claim. It was intended to invest the court with jurisdiction, in the exercise of its discretion, to deny intervention where from the facts stated by the claimant it is clear that he does not have "an interest in the litigation." That this discretion is vested in the court is recognized by many authoritative decisions. Generally, the exercise of that discretion is not subject to review. In a few instances the discretion is not absolute, and exercise thereof is subject to review.

The law upon the subject succinctly is set out by the Supreme Court in Credits Commutation Co. v. United States, 177 U.S. 311, 315, 20 S.Ct. 636, 638, 44 L.Ed. 782. In that case the Supreme Court said: "When * * * leave to intervene in an equity case is asked and refused, the rule * * * is well settled that the order thus made denying leave to intervene is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding. Such an order not only lacks the finality · which is necessary to support an appeal, but it is usually said of it that it cannot be reviewed, because it merely involves an exercise of the discretionary powers of the trial court. * * * It is doubtless true that cases may arise where the denial of the right of a third party to intervene therein would be a practical denial of certain relief to which the intervener is fairly entitled, and which he can only obtain by an intervention. Cases of this sort are those where there is a fund in court undergoing administration to which a third party asserts some right which will be lost in the event that he is not allowed to intervene before the fund is dissipated. In such cases an order denying leave to intervene is not discretionary with the chancellor, and will generally furnish the basis for an appeal, since it finally disposes of the intervener's claim by denying him all right to relief."

The proposed intervener here claims that his case is identical with that instanced, in the language quoted, as an exception to the general rule that the chancellor is vested with discretion to deny the petition for leave to intervene. I consider then whether the proposed intervener has stated facts showing that his case is within the exception described.

 The case excepted from the general rule is a case in which (1) there is a fund in court undergoing administration; (2) a third party asserting some right in that fund; (3) the right asserted is of such a nature that it will be lost if intervention is not permitted before the fund is dissipated.

The second and third of the three elements of this excepted case obviously should be expanded by adding that the assertion of a right in the fund in question must be a statement of facts showing such a right and of facts showing that the right would be lost if intervention is not permitted.

The case stated by the proposed intervener here satisfies none of the elements of the exception.

 This is not a case in which any fund is undergoing administration. The fund in court in no sense is the subject of

litigation involved in the case. The sole question in litigation is the validity of the processing tax provisions of the Agricultural Adjustment Act and the right of the collector of internal revenue to enforce the processing tax provisions of that act against the plaintiff. The fund deposited with the court is a mere incident of an incident of that litigation. It was required to be deposited in lieu of the giving of a bond by the plaintiff when temporary injunctions were issued on its behalf. Every penny of the fund was paid by the plaintiff into the custody of the court and was the property of the plaintiff. No one other than the plaintiff ever has acquired any title to that fund. It was paid into the custody of the court upon the clearly implied condition that if a permanent injunction should be granted it would be repaid to the plaintiff. In no true sense was the fund the subject-matter of the litigation. In no true sense, therefore, was it a fund undergoing administration in the court.

▆▆▆▆ Not only is there no fund here undergoing administration, but the proposed intervener has stated no facts showing that he has any right in the fund, any title, legal or equitable to, or lien upon, any portion of the fund.

The contention of the proposed intervener is that when, after the institution of this proceeding, plaintiff sold him a barrel of flour, plaintiff added to the price of that barrel of flour $1.38 on account of the demand made by the defendant upon plaintiff of a tax of $1.38 for the processing of the wheat used in the manufacture of the barrel of flour, and he says that he paid to the plaintiff the $1.38 which the plaintiff added to the price.

If the facts thus asserted by the proposed intervener be accepted as true (as they must now be), and if it be assumed that by reason of such facts the proposed intervener has a cause of action against the plaintiff to recover from the plaintiff the $1.38 paid by the proposed intervener, it is certain that he has no lien of any kind against any specific property of the plaintiff. Indeed he has no lien of any kind against any of the property of the plaintiff until his cause of action has been merged in judgment.

If the proposed intervener acquired no lien against any specific property of the plaintiff when he paid the plaintiff the additional $1.38, certainly no such lien came into existence as to some special fund belonging to the plaintiff when and because the plaintiff removed that fund from its own treasury to some other place. The fact that the other place to which the plaintiff removed the fund was the registry of this court could not affect the conclusion stated.

Of course the proposed intervener, if he has no right in or lien upon the fund, is in no position to assert that the third element of the excepted case described by the Supreme Court is present in his case, that is to say, that his right or lien will be lost in the event he is not allowed to intervene before the fund is dissipated. He has no right or lien to be lost.

The case of the proposed intervener then is not one of that limited number of cases in which the chancellor has no discretion to permit or to refuse intervention.

2. From what has been said already, it is clear that even if the intervention asked were permitted in this case, the intervener, upon the facts stated in his petition to intervene and in his proposed petition of intervention, could not ultimately prevail. Since that is true, discretion should be exercised to deny the petition to intervene.

3. The conclusion here stated is fortified by opinions concerning similar questions by District Judge Baltzell of the Southern District of Indiana in Acme-Evans Co. v. Will H. Smith, Collector (D.C.) 13 F.Supp. 356, decided January 22, 1936, and by Judge Vaught of the Western District of Oklahoma in Perry Mill & Elevator Co. v. H. C. Jones, Collector (D.C.) 13 F.Supp. 241.

4. It is necessary briefly to discuss one other matter. The proposed intervener points to the offer of the plaintiff in its bill to restore to its customers such portion of the processing taxes as have been paid to the plaintiff by those customers, and its offer to do that "under the orders and supervision of this court." It is sufficient to say that this voluntary offer of the plaintiff, which constituted no part of the basis for the relief prayed by it against defendant, added nothing whatever to the right or title of the proposed intervener to any part of the fund paid by the plaintiff into the registry of the court.

The petition of Eades to intervene is denied. It is so ordered.[4] An exception is allowed to Eades.

---

[4] Note. Orders similar to this will be made as to all other petitions to intervene in this case and as to all petitions to intervene in other processing tax cases in this court. To the end, however, that proposed interveners may have opportunity to apply to the Court of Appeals for orders restraining the present disbursement of funds deposited in the registry of the court in these cases, no order of disbursement of those funds to the plaintiffs in the cases will be made before one week from the day when the memorandum opinion and order in this case is filed.