BLUMGART et al. v. ST. LOUIS–SAN FRANCISCO RY. CO. et al. (two cases).

Nos. 10903, 10939.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1938.

Rehearing Denied March 3, 1938.

R. Walston Chubb, of St. Louis, Mo. (Philip A. Maxeiner, of St. Louis, Mo., Karelsen & Karelsen, of New York City, and Lewis, Rice, Tucker, Allen & Chubb, of St. Louis, Mo., on the brief), for appellants.

A. P. Stewart, of St. Louis, Mo. (J. W. Jamison and E. G. Nahler, both of St. Louis, Mo., on the brief), for appellees J. M. Kurn and John G. Lonsdale, trustees, St. Louis-San Francisco Ry. Co., debtor.

Before STONE, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

These are two appeals (one allowed by this court and one by the District Court) from an order denying intervention in the reorganization proceeding of St. Louis-San Francisco Railway Company, debtor.

The debtor is a large railroad system including, as a part thereof, about 252 miles of main line and about 60 miles of branch lines formerly owned by the Kansas City, Memphis & Birmingham Railroad Company. After having leased this mileage for many years, legal title to such, as well as to all rolling stock and equipment, was acquired by the debtor in 1928.

In March, 1894, the Birmingham executed its mortgage securing two issues of bonds, payable in 50 years. The first and senior issue was of "General Mortgage Bonds" and the other was of "Income Bonds." Of the former class of bonds, $3,323,000, and of the latter class, $3,582,000 are outstanding. This mortgage is a first lien upon all of the property and income of the Birmingham. There are junior mortgages in large amounts covering this and other property of the St. Louis-San Francisco.

Petition in this reorganization proceeding was filed May 16, 1933, and is yet pending. Apparently, no plan for reorganization has been presented. On December 9, 1935, three individuals (appellants), as a committee for holders of general mortgage bonds and of income mortgage bonds of the Birmingham, filed an application for leave to intervene, to which was attached the contemplated petition in intervention. The proposed petition in intervention, among other things, alleged: That no interest had been paid on any bonds under this mortgage since March 1, 1934; that the bonds had matured March 1, 1934, and were in default; that there were three junior mortgages (refunding mortgage of the Kansas City, Ft. Scott & Memphis Railway Company, prior lien mortgage of the St. Louis-San Francisco Railway Company, and consolidated mortgage of the St. Louis-San Francisco Railway Company); that the former lines of the Birmingham are the most productive of the system operated by the trustees; that the net earnings therefrom have, at all times since March 1, 1934, been sufficient to pay interest and to make substantial payments upon the principal of the bonds; that segregation of earnings and expenses for 1934 of the Kansas City, Ft. Scott & Memphis Railway Company (which includes the former lines of the Birmingham) had been made; that no segregation of earnings and expenses of the Birming-

ham had been made although requested from the trustees; that such segregation is practicable; that the trustees have refused to pay interest upon the bonds or to make allocation of earnings; that the net earnings from the Birmingham, during this debtor proceeding, have been and are being used for improvements, additions, and betterments to other parts of the system to the prejudice of these bondholders, resulting in impairment of their security; that this mortgage provided that, upon default, the trustee thereunder might take possession of the mortgaged property and devote net income therefrom to payment of the interest and principal of the bonds; that the trustee under the mortgage was not a party to this debtor proceeding; that such trustee had declined (on September 24, 1934) to take any action "until requested so to do by a substantial proportion of such bondholders"; that no other committee of these bondholders had been organized for the reason that "a great proportion" of such bonds were held by those having greater amounts of bonds issued under the above three junior mortgages and, therefore, their substantial interests were adverse to the bonds under the Birmingham mortgage; that such other holders of these bonds have refused to co-operate in organization of a committee to represent the Birmingham bonds; that holders of bonds under each of the three junior mortgages were represented in the debtor proceeding by the trustees thereunder and otherwise; that the bondholders of the Birmingham had no representation; that it is impossible to organize the "widely scattered holders of small amounts" of these bonds "unless the petition of this committee is granted so that said committee in behalf of those it represents can notify said other holders of its efforts in behalf of bondholders." The petition prayed: (1) Intervention "specially * * * to protect and conserve the rights of bondholders represented by them * * * with the right in all matters relating to said rights" to notice and hearing; (2) for a segregation and sequestration of earnings and income from the Birmingham property for the benefit of bondholders under its mortgage; (3) application of such segregated sums to (1) payment of current interest, (2) payment of delinquent interest, and (3) payment of principal of all of the bonds; (4) impressment upon all property of the debtor of an amount found equal to net earnings of the Birmingham property since March 1, 1934; (5) direction to trustees of debtor to file list of bondholders under Birmingham mortgage; (6) general relief.

To this application, the trustees filed objections (1) because failure of applicant to show legal qualification to represent bondholders of Birmingham in that it does not appear whether they come within Bankr. Act, § 77(p), as amended, 11 U.S.C.A. § 205(p), requiring authorization and approval of the Interstate Commerce Commission so to act and, if within such requirement, that such authorization and approval have been procured; (2) because, under the terms of the mortgage, all right of action is exclusively in the trustee thereof; (3) because the total holdings of bonds represented by the committee is only $6,000 of general mortgage and $50,500 of income mortgage bonds out of respective outstanding amounts of $3,323,000 and $3,582,000; (4) because applicants would be "wholly unnecessary additional parties to the record, to the great detriment of the trust estate"; (5) because to grant the segregation of earnings prayed in the petition in intervention would result in imposing on the trust estate "great and unnecessary cost and expense without any material benefit" to bondholders under the Birmingham mortgage.

The matter was referred to the special master. The master held a hearing and, on the evidence, found that the property covered by the Birmingham mortgage was part of the estate of the debtor; that the outstanding bonds under this mortgage were $3,323,000 of general mortgage and $3,582,000 of income mortgage bonds; that applicants represented $6,000 of general mortgage and $50,500 of income mortgage bonds, "being less than 1% of the aggregate face amount of bonds outstanding and secured by said" mortgage; that, under the terms of the mortgage, the trustee thereunder had "sole right of action" in case of default; that no sufficient cause for intervention was shown and to allow such would "unnecessarily add parties to and encumber the record." On these findings, the master stated his conclusions: (1) That applicants were not entitled to intervene and (2) that, "upon petition therefor and cause shown," the trustee under the mortgage "might be permitted to intervene." He recommended denial of the application to intervene.

To this report applicants filed exceptions to two of the findings, as follows: To the fourth finding because the mortgage did

not "exclude actions by bondholders where the trustee has refused to act." To the fifth finding, because:

"(a) The evidence shows that the trustee has refused to act.

"(b) The mortgage bonds secured by the said mortgage have been in default as to Principal since March 1, 1934.

"(c) The evidence shows that the income of the mortgaged property is more than sufficient to pay interest on the bonds in question and that said income is being used for general obligations of the Frisco system and not being applied or set aside for payment of principal of these bonds.

"(d) The evidence shows that this mortgage was originally secured by a substantial amount of rolling stock; that at the present time there is no rolling stock securing this mortgage and that the mortgagor is in default in its covenant to maintain the said rolling stock.

"(e) The evidence shows that almost half of the bonds secured by this indenture are owned at the present time by the holders of junior securities of the Frisco system who own larger amounts of such junior securities than of the General Mortgage bonds, giving them an adverse interest opposed to that of the interveners and smaller bondholders.

"(f) The evidence shows that the trustees of the debtor have no immediate plans for paying or making provision for the payment of the bonds secured by this issue."

The exceptions covered, also, failure to find the following:

"(a) That the General Mortgage Bonds issued under the Mortgage dated March 1, 1894, have been in default as to principal since March 1, 1934.

"(b) That the General Mortgage Bonds issued under the mortgage constitute a first lien on 253 miles of railroad constituting a profitable part of the Frisco system.

"(c) That the bonds of this issue are not represented by any other party or intervener in the above entitled proceedings.

"(d) That these interveners have made demand upon the trustee to take action to protect their interests and that the said trustee has failed and refused to take any action pursuant to said demand.

"(e) That the income from the property of the Kansas City, Memphis and Birmingham Railroad securing this mortgage is more than sufficient to pay taxes, expenses of operation and interest on the bonds of this issue; that such excess income is not being segregated or reserved or set aside for payment of these bonds, but is being applied to pay other debts of the debtor.

"(f) That the security for these bonds, particularly the rolling stock originally mortgaged as security therefor, have been dissipated and that there is now no rolling stock securing this mortgage, and that said action of the mortgagor constitutes a default under said mortgage. * * *

"That the provisions of the mortgage give the bondholders a lien on income of the mortgaged property."

To the conclusions stated by the master, the exceptions were as follows:

"To conclusions of law numbered 1, to the effect that the applicants are not entitled to intervene in this proceeding, this conclusion of law being contrary to the usual right of bondholders to intervene and enforce their rights unless restrained by specific provisions of the mortgage, which are absent in this case. The finding is also contrary to the provisions of subsection (c) (13) of section 77 of the Bankruptcy Act as amended, 11 U.S.C.A. § 205(c) (13) permitting bondholders to intervene.

"To conclusions of law numbered 2, holding that the trustee under the said General Mortgage might be permitted to intervene in this proceeding on the ground that the said conclusion is irrelevant, as no application for such intervention is now pending in this proceeding."

Also, for failure to conclude in the conclusions that provisions of the mortgage giving bondholders a lien upon income "will be ineffective and all rights to such income will be lost unless timely demand therefor is made in these proceedings, which is the purpose of the present intervention." Without expression of reasons, the court denied the exceptions, sustained the report, and denied the application to intervene. [1]

For the purpose of concentrating the determinative issues here, certain conten-

[1] After this petition was filed, an order was made which has resulted in payment of the interest on the bonds. This bears upon the result of the exercise of discretion by the court but not upon the issues determinative here.

716

tions of the parties will be discussed. Appellees contend that this is not an appealable order because it was the exercise of discretion of the court. Appellants contend both that the application was addressed to the discretion of the court and also that the intervention was a matter of right. Clearly, it is the law that where the matter of intervention is discretionary and not a matter of right, an order denying intervention is not a final order for purposes of appeal, but where intervention is a matter of right such order is appealable. New York City v. New York Tel. Co., 261 U.S. 312, 316, 43 S.Ct. 372, 373, 67 L.Ed. 673; Credits Commutation Co. v. United States, 177 U.S. 311, 315, 316, 20 S.Ct. 636, 44 L.Ed. 782; Ex parte Cutting, 94 U.S. 14, 22, 24 L.Ed. 49; Palmer v. Bankers' Trust Co., 8 Cir., 12 F. 2d 747, 754; McKee v. Brazell, 8 Cir., 284 F. 554, 555; Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20, 30; Massachusetts Loan & Trust Co. v. Kansas City & A. R. Co., 8 Cir., 110 F. 28, 30. Therefore, these counter contentions resolve themselves into the single issue of whether this intervention was discretionary or was a matter of right.

■ Another contention of appellees is that the application to intervene was properly denied because to grant the relief sought in the proposed petition in intervention "might embarrass or prevent the formulation or consummation of a plan" of reorganization. This is a matter of fact. There is nothing in the findings of fact as to this. In the fifth finding, the master states that granting the application "would not advance justice in any direction and would unnecessarily add parties to and encumber the record." This is, by no means, a finding that the segregation of earnings sought in the petition in intervention would embarrass or prevent the formulation or consummation of a plan of reorganization. No such issue is raised by the exceptions to the report and we have no statement from the trial court upon this subject. We have not here the basis to reach the conclusion contended for, therefore, that contention is beyond our consideration.

The contentions here are thus reduced to the following: (1) Do the provisions of this mortgage exclude these bondholders from taking this action to protect their supposed rights? (2) If the mortgage has no such effect, is intervention here a matter of right?

■ The answer to both these questions may be found in subsection (c) (7) of section 77 as amended, 11 U.S.C.A. § 205(c) (7). This section covers the filing and classification of claims of creditors. It requires the court "promptly" to fix a reasonable time within which such claims may be filed and no claim not so filed "may participate except on order for cause shown." It provides that, "for the purposes of the plan and its acceptance," the creditors shall be classified "according to the nature of their respective claims and interests." It clearly implies that such classification must be made if "there be substantial differences in priorities, claims, or interests." It allows a mortgage trustee to file a claim on behalf of all bondholders under the mortgage. If the trustee so acts, it is "unnecessary" for the bondholders to file claims. It expressly denies that such trustee filing shall constitute the trustee as a representative of the bondholders for accepting or rejecting a plan of reorganization.

■ The bondholders are the creditors under a mortgage. Bitker v. Hotel Duluth Co., 8 Cir., 83 F.2d 721, certiorari denied 299 U.S. 577, 57 S.Ct. 41, 81 L.Ed. 425; Brant Ind. M. Co. v. Palmer, 8 Cir., 262 F. 370; Mackay v. Randolph Macon Coal Co., 8 Cir., 178 F. 881; Fitkin v. Century Oil Co., 2 Cir., 16 F.2d 22; U. S. Trust Co. v. Gordon, 6 Cir., 216 F. 929. Except for the above express statutory permission, the trustee could not file claims for the bonds. The obvious intendment is that such creditors can file such claims and, if the trustee does not do so, must file such in order to secure recognition and classification in the reorganization proceedings. This statute having thus declared the rights of the bondholders, no provision in the deed of trust can prevent them exercising such rights because "Who may maintain a suit is a matter of law, not subject to be controlled by the private conventions of parties." Mackay v. Randolph Macon Coal Co., 8 Cir., 178 F. 881, 884; Fitkin v. Century Oil Co., 2 Cir., 16 F.2d 22, 24. In view of the statute, this mortgage is ineffectual as a bar to the right of individual bondholders to file their claims on their bonds and is ineffectual as a limitation upon such right to the extent that it is prejudicial to such right. Thus, this subsection provides a required way in which the bondholders must act to have their rights protected—either by the trustee filing a claim for all of the bond-

holders or the bondholders filing for themselves.

■ Either of these ways affords full protection to the right of the bondholders to be represented in the proceeding. This remedy being open, there is no necessity for any of these appellant bondholders to intervene "specially" for the purposes stated in the proposed petition in intervention. Therefore, such character of special intervention is not matter of right, but addressed to the judicial discretion of the court.

The remedy of right which these appellants have is to file their claims upon their bonds unless the trustee under the mortgage does so for all bondholders. In placing the above qualification—"unless the trustee under the mortgage does so for all bondholders"—upon the right of the individual bondholders to file separate claims, we have in mind both recognition of the requirements of the mortgage up to the point where such recognition becomes prejudicial to the rights given the bondholders by the statute; and, also, the practical consideration of the desirability of a unitary representation of the bonds in a reorganization proceeding.

■ We have not, of course, reached the merits of the matters set forth in the proposed petition in intervention and carefully refrain from any expression as to such. To effectuate the above announcements, the disposition of these appeals will be as follows: Because this proposed intervention is in the nature of a proceeding in bankruptcy under section 24b of the Bankruptcy Act, as amended, 11 U.S.C.A. § 47(b), the appeal in No. 10,939 will be dismissed for want of jurisdiction in the District Court to allow the appeal. The appeal in No. 10,903 will be dismissed because, in the situation here, the allowance of intervention was discretionary. The dismissal of the appeal in No. 10,903 is without prejudice to these and other individual bondholders filing claims (individually or through a committee) if the trustee under this mortgage shall not, within a reasonable time, elect to file for all bondholders. Upon receipt of the mandate herein, the trial court is instructed to enter an order fixing a reasonable time within which such trustee may file a claim on behalf of all bondholders under this mortgage and, upon failure of the trustee to file such claim within the period so fixed, to allow bondholders under this mortgage (individually or represented by a committee

or committees) to file their claims within a reasonable time to be fixed by the trial court.