Cassie S. PENNINGTON, Appellant,

v.

MISSOURI PACIFIC RAILROAD COM-
PANY, Debtor, and the Debtor's
Trustee, Appellees.

No. 15619.

United States Court of Appeals
Eighth Circuit.

Dec. 21, 1956.

Robert Kratky, St. Louis, Mo. (Bernard Susman, St. Louis, Mo., with him on the brief), for appellant.

Thomas T. Railey, St. Louis, Mo. (Russell L. Dearmont and Harold L. Harvey, St. Louis, Mo., with him on the brief), for appellees.

Before SANBORN, WOODROUGH and WHITTAKER, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant is a colored man who worked on the Missouri Pacific Railroad as a train porter from about 1917 to about February 29, 1952, when he retired. More than three years after his retirement, he filed an application in the Missouri Pacific Reorganization Proceedings for leave to file an intervening petition and claim therein against the Debtor Company and its Trustee. He attached to the application and made a part thereof a proposed intervening petition and claim in the nature of a class action for a declaratory judgment and for damages arising out of alleged wrongful discrimination against himself and other train porters on account of their race and color. All of the "train porters" are Negroes and the petition alleged that the "train porters" performed substantially the same class of work as the "white passenger train brakemen" employed on the railroad, and work additional to the work done by the "brakemen," but that solely by reason of discrimination on account of race and color, the "train porters" received considerably less pay than the brakemen for their work. The Reorganization Proceedings of the Missouri Pacific Railroad Company began in 1933 and it was alleged in the intervening petition that a differential in the wages paid the colored train porters and the

wages paid the white brakemen continued during the trusteeship. The petition presents that the Trustee was an officer of the federal court and that discrimination on his part based on race or color of the employees was in violation of the Fifth Amendment of the Constitution of the United States. The prayer of the petition was for recovery of additional wages for appellant and for the train porters for the period that the Trustee operated the railroad and for declaratory judgment that train porters have been and are entitled to be paid the same wages as those paid to passenger train brakemen.

Guy A. Thompson, Trustee of Debtor, filed Suggestions in Opposition to the Application for Leave to File Intervening Petition. His principal objection to the intervention was the fact that the reorganization of the railroad was about to be finally terminated at the time that the power of the court was invoked to grant leave to file the petition of intervention. The Trustee referred to the record which shows that after some twenty-three years of administration, a Plan of Reorganization had finally been approved and thereafter confirmed, and before appellant's application to intervene was reached for decision, an order had been entered conditionally dismissing the Trustee and turning the railroad property over to the reorganized Missouri Pacific Railroad Company. That company assumed unpaid obligations of the Trustee and the Debtor and could be sued therefor in any court of competent jurisdiction.

The Trustee also denied liability of the Debtor or himself to the applicant for intervention and asserted that the proposed petition failed to state facts sufficient to constitute a justiciable cause of action.

The application for leave to intervene was filed October 19, 1955, and the Suggestions of the Trustee in Opposition on November 30, 1955. The issue as to the granting of leave was briefed on both sides and the time for filing the last brief was February 15, 1956.

On March 30, 1956, the court entered the order denying leave to intervene as follows: .

"The Court having before it the application of Cassie S. Pennington for leave to file his intervening petition and his claim against the Debtor and the Debtor's Trustee, and having examined said application, heard the argument of counsel, studied the briefs of the parties, and being fully advised in the premises, Doth Order that said application be and the same is hereby denied."

This appeal has been taken to reverse that order but the appellee contends that the intervention was a permissive matter within the discretion of the court; that the intervention was not indispensable to the preservation or enforcement of appellant's claims; that appellant was in no wise adversely affected by the transfer of the Debtor's property to the Reorganized Company on the prescribed terms and conditions or by the judgments entered consummating the Reorganization Proceedings; that the order denying intervention did not purport to and did not make any final determination of any of the merits of the claims on which the application for intervention was based; and that the order was not a final order for purposes of appeal.

We think the position of the Trustee is sound and fully supported by the facts shown in the record and by the precedents.

There is no federal statute conferring an unconditional right upon the appellant here to intervene by reason of the claims asserted in his petition. Section 77, sub. c(13) of the Bankruptcy Act provides that "upon petition therefor and cause shown" any "interested party may be permitted to intervene." Title 11 U.S.C. § 205. It does not provide that such intervention shall be permitted as a matter of right. Rule 24 of the Rules of Civil Procedure, 28 U.S.C.A. defines the distinction between "Intervention of Right" covered in 24(a) and "Permissive Intervention" covered in 24(b).

■ Intervention as a matter of right exists only (1) when a statute of the United States confers an unconditional right to intervene; or (2) when applicant's representation is inadequate and he is or may be bound by a judgment in an action; or (3) when applicant will be adversely affected by a distribution or other disposition of property in the custody of the court.

■ The case at bar does not meet any of those requirements. At the time the court acted upon the application for intervention, the Consummation Order and Final Decree had been entered and in force in the Reorganization Proceedings for thirty days and it was evident that no judgment in respect to the appellant's claims had been rendered against him. The restoration of the Debtor's property to private ownership was conditioned by sections 8.01 and 8.03 of the Consummation Order as follows:

"8.01(d). The Reorganized Company shall pay in cash, or assume, without further action by this Court, all claims in so far as not paid prior to the Consummation date [March 1, 1956] in respect to the following: * *. *

"(xi) All obligations incurred by the Trustee of the Debtors and of the Natchez & Southern Railway Company in his official capacity as bankruptcy trustee pursuant to the authority of this Court."

"8.03. From and after the Consummation Date, there shall be no liability on the Trustee of the Debtors * * * for any obligation incurred by him in his official capacity as bankruptcy trustee pursuant to the authority of this Court; and the Reorganized Company shall alone become and be liable for any and all such obligations in the place and stead of the Trustee of the Debtors * * *."

It is obvious therefore that at the time Judge Moore denied the intervention no good purpose could have been served by granting it. It was then clear that the

termination of the Reorganization Proceedings and restoration of the railroad to the Reorganized Company subject to the foregoing obligations and liabilities did not adversely affect any right asserted by the applicant for intervention. It left him entirely free to litigate his claims directly against the party he charges with liability in any court of competent jurisdiction.

Judge Moore made no findings adverse to appellant and his order denying the intervention applied for shows clearly that it was entered in the exercise of sound discretion. As the intervention applied for was a permissive matter and sound discretion was exercised in denying it, the order of the court "falls below the level of appealability."

In Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646, the Court said:

"Ordinarily, in the absence of an abuse of discretion, no appeal lies from an order denying leave to intervene where intervention is a permissive matter within the discretion of the court. * * * The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that may be entered in the case. He is at liberty to assert and protect his interest in some more appropriate proceeding. Having no adverse effect upon the applicant, the order denying intervention accordingly falls below the level of appealability."

In Blumgart v. St. Louis-San Francisco Railway Co., 8 Cir., 94 F.2d 712, 716, Judge Stone, speaking for this court, said:

"Clearly, it is the law that where the matter of intervention is discretionary and not a matter of right, an order denying intervention is not a final order for purposes of appeal, but where intervention is a matter of right such order is appealable."

In Credits Commutation Co. v. United States, 177 U.S. 311, 315, 20 S.Ct. 636, 638, 44 L.Ed. 782, the Supreme Court quotes with approval the following from this court's decision in the same case, to-wit:

" 'When such action is taken, that is to say, when leave to intervene in an equity case is asked and refused, the rule, so far as we are aware, is well settled that the order thus made denying leave to intervene is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding. Such an order not only lacks the finality which is necessary to support an appeal, but it is usually said of it that it cannot be reviewed, because it merely involves an exercise of the discretionary powers of the trial court.' "

Numerous other decisions to the same effect are cited and relied on in Judge Sanborn's opinion in Slupsky v. Westinghouse Electric & Mfg. Co., 8 Cir., 78 F.2d 13, 15.

The applicant for intervention in this case could have brought an action on the claims of his petition at any time during the Trustee's operation of the Debtor railroad without leave of the Bankruptcy Court under Title 28 U.S.C.A. § 959, or he might have been permitted, in the court's discretion, to litigate his claims in the Reorganization Proceedings if he had made timely application to do so. But at the time decision was made on the issue of intervention, it is manifest that no good purpose could have been served by granting the leave applied for. The object of the Reorganization Proceedings to consummate a Plan for restoration of the Debtor's property to private control had been finally achieved and the way opened to appellant to litigate his claims against the railroad directly with the railroad.

Both parties to this appeal have briefed and orally argued the questions

as to the sufficiency of the plaintiff's petition but, as stated, Judge Moore's order does not indicate that he made any findings or expressed any conclusion in respect to those questions and as we conclude that the order "falls below the level of appealability," we also decline to pass upon the sufficiency or merits of the proposed petition. Our Order is that the appeal be and the same is dismissed.

Dismissed.