383 F.2d 123
 Harry W. EDMONDSON and Paul E. Rhodes, as the personal
representative of his Estate, Appellants,
v.
STATE OF NEBRASKA ex rel. Clarence A. H. MEYER, Attorney
General andLumbermens Mutual Casualty Company, Appellees.
 No. 18681.
 United States Court of Appeals Eighth Circuit.
 Sept. 12, 1967.
 
 Paul Rhodes, Elwood, Kan., for appellants.
 Robert A. Nelson, Sp. Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for appellees; Clarence A. H. Meyer, Atty. Gen. of Nebraska, Lincoln, Neb., and Baylor, Evnen, Baylor & Urbom, Lincoln, Neb., on the brief.
 Before VOGEL, Chief Judge, and VAN OOSTERHOUT and GIBSON, Circuit judges.
 FLOYD R. GIBSON, Circuit Judge.
 
 
 1
 This is an appeal from the Ubited States District Court for the District of Nebraska denying appellant, Harry W. Edmondson (now deceased), the right to intervene in an action between the State of Nebraska and one Paul E. Rhodes.
 
 
 2
 This is but one phase of litigation that has extended over many years between Paul E. Rhodes and the State of Nebraska. At one time Rhodes was confined to the Nebraska State Penitentiary following a conviction for contempt of court.
 
 
 3
 Thereafter, Rhodes began seeking various forms of relief in state and federal courts. Rhodes filed actions against numerous state officials for alleged violation of his constitutional rights and his rights under the Federal Civil Rights Act. Each of these suits resulted in a determination against Rhodes and in favor of the state officials. Rhodes v. Houston 202 F.Supp. 624 (D.Neb.1962) aff'd 309 F.2d 959 (8 Cir. 1962) cert. denied 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; Rhodes v. Meyer, 334 F.2d 709 (8 Cir. 1964) cert. denied 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186; Rhodes v. Jones, 351 F.2d 884 (8 Cir. 1965) cert. denied 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673. Numerous suits were also initiated by Rhodes in the Nebraska courts with the issues again being resolved against him. Rhodes v. Houston, 172 Neb. 177, 108 N.W.2d 807; Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731, cert. denied 369 U.S. 848, 82 S.Ct. 931, 8 L.Ed.2d 8; Rhodes v. Crites, 173 Neb. 501, 113 N.W.2d 611; Rhodes v. Star Herald Printing Co., 173 Neb. 496, 113 N.W.2d 658, cert. denied 371 U.S. 822, 83 S.Ct. 39, 9 L.Ed.2d 62.
 
 
 4
 In addition to this litigation Rhodes initiated a suit against Harry W. Edmondson in the United States District Court for the District of Kansas. Apparently, Edmondson was one of the prison guards during Rhodes' confinement in the Nebraska prison. In the Kansas case Edmondson defaulted, a jury assessed damages, and a judgment was rendered in favor of Rhodes in the amount of $450,000.00.
 
 
 5
 The present suit was initiated by the State of Nebraska and its surety, the Lumbermens Mutual Casualty Company, against Rhodes. The Complaint below set forth the various unsuccessful actions by Rhodes against the State and its officials and alleged fraud and collusion between Rhodes and Edmondson in obtaining the default Kansas judgment. The Complaint asked that Rhodes be enjoined from further vexatious litigation against the State of Nebraska and its representatives on this cause of action. Further, the Complaint asked for a declaration that the judgment of the United States District Court for the District of Kansas was null and void.
 
 
 6
 On November 10, 1964 Harry W. Edmondson, pro se, requested permission to intervene in the suit between the State of Nebraska and Rhodes. With this intervention petition, Edmondson filed a crosscomplaint against the plaintiffs asking for $50,000,000.00 in damages. About a year later, on November 30, 1965, plaintiffs filed a suggestion as to the death of Harry W. Edmondson. No response was made to this suggestion, nor has there been any motion for the substitution of parties, as provided in Rule 25(a)(1), F.R.Civ.P.
 
 
 7
 Defendant Rhodes, as a judgment creditor of Edmondson, was duly appointed administrator of the estate of Edmondson, and is representing the Edmondson estate in this intervention. On October 17, 1966 the trial court denied Edmondson's petition for intervention. No reason was given,[1] Edmondson via Rhodes appeals the denial of the intervention to this Court.
 
 
 8
 We have examined the record and the briefs of the parties and are of the opinion that Edmondson could not intervene as a matter of right in the action between the State of Nebraska and Paul E. Rhodes. Thus, intervention in this case is a matter of permissiveness that must rest with the sound discretion of the trial court. Under the circumstances the trial court was well within its discretionary powers when it denied intervention.
 
 
 9
 Rule 24 Fed.R.Civ.P. (as amended, effective July 1, 1966) governs the right to intervene. This rule provides in part:
 
 
 10
 'Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.'
 
 
 11
 Thus to intervene the applicant must generally show three things: 1) That he has recognized interest in the subject matter of the primary litigation, 2) That his interest might be impaired by the disposition of the suit, and 3) That his interest is not adequately protected by the existing parties.
 
 
 12
 Examination discloses that Edmondson has not satisfied any of the above criteria. In one portion of the primary suit, the State is seeking to enjoin Rhodes from harassing it with repeated litigation on the same cause of action. Edmondson has absolutely no connection with this portion of the primary litigation and would in no way be bound by the court's decree on the subject. The portion of the primary litigation seeking to declare the Kansas judgment void involved Edmondson only obliquely. However, if this issue is resolved against Rhodes, we cannot see how it would have any detrimental effect upon Edmondson. In fact, if the State is successful in its attempt to nullify this Kansas judgment, Edmondson would receive the substantial benefit of being relieved of a $450,000.00 debt.
 
 
 13
 Edmondson asserts that his interest in the outcome is provided by plaintiffs' allegation of his fraud and collusion with Rhodes. Plaintiffs, however, are seeking no relief against Edmondson. So, whatever the disposition of this issue, it would not affect Edmondson's legal interest. The mere fact that proof of Edmondson's actions in the Kansas court amounted to fraud cannot serve as a basis for mandatory intervention without a showing that a legal detriment flows from this finding. The mere fact that Edmondson's reputation is thereby injured is not enough. Edmondson's representative has pointed to no legal detriment flowing from this possible finding of the trial court, and we can find none. In fact, if the trial court should find that the Kansas judgment is void due to Edmondson's fraud, far from being injured he has received a positive benefit.
 
 
 14
 Finally, even if Edmondson has some legal interest in this litigation, it appears that his interest is being adequately protected by the existing parties. Inadequacy of representation is a necessary element to be proved by a party seeking to intervene under Rule 24(a) Though Edmondson has a certain mutuality of interest with plaintiffs in seeking the erasure of the Kansas judgment, it has not even been suggested that plaintiffs are inadequately representing that interest. Furthermore, any interest Edmondson might have in common with defendant is being adequately defended by defendant Rhodes.
 
 
 15
 Rhodes, a disbarred attorney, is the original defendant and is representing himself pro se. Rhodes is also representing the estate of Edmondson as administrator. Thus, Edmondson's intervention would in no way alter the present representation. It would only allow Rhodes to portray a second role. Any interest that Edmondson has in common with Rhodes and against the State that would otherwise allow him to intervene, is adequately represented at the present time by Rhodes acting for himself against the State. Representation of Edmondson's interest is adequately being handled by the existing parties. H. K. Ferguson Company v. Nickel Processing Corporation, 33 F.R.D. 268 (S.D.N.Y.1963); Carroll v. American Federation of Musicians, 33 F.R.D. 353 (S.D.N.Y.1963).
 
 
 16
 Thus, we find no mandatory right of intervention under Rule 24. Edmondson has no recognizable legal interest in this litigation and any interest that may exist is adequately represented by Rhodes acting on his own behalf as defendant. Therefore, at most this motion by Edmondson is a request for a permissive intervention. The trial court has wide discretion in granting or denying these requests. When permissive intervention is denied we will reverse the trial court only for clear abuse of its discretion. Stadin v. Union Electric Co., 309 F.2d 912 (8 Cir. 1962); 4 Moore, Federal Practice, para. 24.15.
 
 
 17
 Appellant has shown no sound reason why his presence in this litigation is desirable. Further, with this intervention appellant has injected additional issues that may well complicate the resolving of the primary issues between the parties to this suit, and unduly delay the trial of the original suit.
 
 
 18
 With his intervention petition appellant filed a cross-complaint against the State of Nebraska alleging that it fraudulently induced intervenor to violate the civil rights of Rhodes, that plaintiff caused intervenor to lose his job, that plaintiff held intervenor to public scorn and made him unable to take a bar examination, that plaintiff illegally refused to defend him in the Kansas suit instituted by Rhodes, that plaintiff waived its sovereign immunity as to intervenor and was thus liable to intervenor for $50,000,000.00. Intervenor's cross-complaint is obviously seeking to inject issues into this litigation other than the propriety of plaintiffs' requested relief against Rhodes. The trial court did not abuse its discretion in denying the intervention. 4 Moore's Federal Practice, para. 24.10.
 
 
 19
 Furthermore, this intervention has the earmarks of a sham. Rhodes brought suit against Edmondson in Kansas and received a $450,000.00 default judgment against him. Edmondson, now represented by Rhodes, admits the truth of Rhodes' allegations against him. Though never appearing in the Kansas action, Edmondson now seeks to raise the issues herein, through the mouth of his former adversary. When improper motive in seeking intervention appears, the trial court should be wary to grant the request. Kozak v. Wells, 278 F.2d 104, 107, 113, 84 A.L.R.2d 1400 (8 Cir. 1960). If the estate of Edmondson has a recognizable claim against the State of Nebraska, it may present this claim to the proper forum. There is no necessity that these issues be injected into litigation between the State of Nebraska and Rhodes.
 
 
 20
 Thus, under all of the existing circumstances the trial court was justified in denying permissive intervention.
 
 
 21
 As a final point, we note that a Suggestion of Deaty of the petitioning intervenor was properly filed with the court and served upon the interested parties. However, no request for substitution or amended intervention petition was, or has been filed. This, in itself, might be grounds for the denial of intervention. Rule 25(a)(1), Fed.R.Civ.P. governing the substitution of parties does not literally govern this case as the petition for intervention had not been granted. Edmondson was thus not actually a party to the suit. However, the rationale behind Rule 25 would seem to be applicable. The party herein seeking intervention is no longer in existence. Therefore, there is no person presently before the court on which the court's judgments and actions can take effect. There is no existing person whose rights can be adjudicated. Thus, substitution or amendment of the parties would seem to be necessary.
 
 
 22
 A petitioner's right to intervene might well be based on an interest in the litigation that did not survive the petitioner's death. In such a situation the trial court must be informed of the true nature of the controversy and the actual parties seeking to be heard. Failure to amend or substitute leaves the court unable to act. Therefore, until a proper substitution of the deceased person's representative has been made the trial court would seem to have no choice but to dismiss the intervention as to the deceased person. Graham v. Pennsylvania Railroad, 119 U.S.App.D.C. 335, 342 F.2d 914 (1965), cert. denied 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286; Mitchell v. Cole, 35 F.R.D. 115 (W.D.Wis.1964).
 
 
 23
 We recognize there are cases construing Rule 25(a)(1) as flexible, leaving the court with discretion to enlarge the period. Staggers v. Otto Gerdau Company, 359 F.2d 292 (2nd Cir. 1966). See 4 Moore, Federal Practice 25.01-(6) (2d ed.). However, in the case at bar the court has not even been requested to substitute parties, despite the filing of a suggestion of death by appellees on November 30, 1965. It thus appears that there is no party now seeking intervention that merits the consideration of the court. Regardless of this patent defect, we do not think the court abused its discretion in denying appellant's motion to intervene.
 
 
 24
 The action of the trial court in denying intervention by Harry Edmondson is affirmed.
 
 
 
 [1]
 Intervenor contends that the trial court was required to make findings of fact and conclusions of law by Rule 52(a) Fed.R.Civ.P. This rule specifically provides, however, that 'Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 and 56 or any other motion except as provided in Rule 41(b).' A denial of a motion for leave to intervene is not a decision on the merits of the cause nor does it not fall within the purview of Rule 41(b). Therefore, findings of fact and conclusions of law as to this motion are unnecessary. See, Pennington v, Missouri Pacific Railroad Co., 239 F.2d 332 (8 Cir. 1956); Dowdy v. Hawfield, 88 U.S.App.D.C. 241, 189 F.2d 637 (D.C. Cir. 1951), cert. denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628